UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

CASE NO.

CHERYL DRUKER,

       Plaintiff,

vs.

WALMART, INC.,

       Defendant.

_____/

### DEFENDANT'S NOTICE OF REMOVAL

Defendant Wal-Mart, Inc.,[1] ("Wal-Mart"), by and through undersigned counsel, and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446(b)(3) and Rule 81(c) of the Federal Rules of Civil Procedure, hereby files this Notice of Removal removing to this Court the action originally filed in the 17th Judicial Circuit Court in and for Broward County, Florida, Case No.  CACE 20-018629 (21), with full reservation of rights, exceptions and defenses, and in support thereof states:

**I.**      **Factual Background**

1.      On or about November 6, 2020, Plaintiff filed a Complaint against Wal-Mart in the 17th Judicial Circuit Court in and for Broward County, Florida.  *See* Pl.'s Complaint attached as Ex. "A." The Complaint was served on Wal-Mart on November 13, 2020.  *See* Affidavit of Service attached as Ex. "B."

---

[1]    As Wal-Mart stated in its Answer, Wal-Mart Stores East, L.P. is the owner and operator of the subject store and, therefore, the correct legal entity. Nevertheless, Wal-Mart submits this Notice of Removal under the entity named in the case caption.

2.      Plaintiff Cheryl Druker alleges a claim for negligence against Wal-Mart in Count I of the Complaint as a result of injuries she allegedly sustained on or about August 12, 2020, while she was at a Wal-Mart store located at East Sheridan Street, in Broward County, Florida. *See* Complaint (Ex. A).

3.      The Complaint alleges that Plaintiff Druker was shopping in the Wal-Mart store when one of its employees, while acting within the course and scope of his employment at the store, maneuvered a cart, or some other similar device, into the Plaintiff." *See* Complaint (Ex. A) at ¶¶ 3-5.

4.      Although Plaintiff's Complaint fails to note her citizenship or residency, Plaintiff's interrogatory answers and her driver's license state that she is a resident of Hollywood, Florida. *See* redacted Pl.'s Drivers License attached as Ex. "C"; *see also* redacted excerpt to Pl.'s Discovery Answers/Responses attached as Ex. "D."

5.      Wal-Mart, Inc. is a Delaware corporation and maintains its principal place of business in Bentonville, Arkansas.  *See* Florida Department of State, Division of Corporations, Detail by Entity Name attached as Ex. "E."

6.      On April 14, 2021, Plaintiff served on Wal-Mart her document production in support of her responses to Wal-Mart's Request for Production. *See* Pl.'s E-Mail Service of Document Production attached as Ex. "F." This included her medical records regarding the alleged incident.

7.      Receipt of Plaintiff's document production, specifically regarding Plaintiff's medical expenses, was the first occasion from which Wal-Mart could genuinely ascertain that the case had become removable. *See* Pl.'s Document Production Ex. "G."

8.      As a result, this Court has jurisdiction over this matter, and it is removable based on the complete diversity of citizenship of the parties. The matter is removable based on diversity of citizenship because Plaintiff Druker and Wal-Mart are each citizens of different states and the amount in controversy now revealed exceeds $75,000.00—exclusive of interest, attorney's fees, and costs.

9.      Venue is proper in this Court because the state court where Plaintiff filed the Complaint, the 17th Judicial Circuit in and for Broward County, Florida, is within this Court's jurisdiction.

10.      All State Court filings are attached as Ex. "I."

11.      Wal-Mart reserves the right to raise all defenses and objections in this action after the action is removed to this Court.

## II.   There is Complete Diversity Between the Parties

12.      In accordance with 28 U.S.C. § 1332(a)(1), "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between—citizens of different States."  This action satisfies the complete diversity of citizenship requirements of 28 § 1332(a)(1).

### A.   Citizenship of Wal-Mart, Inc.

13.      For purposes of 28 U.S.C. §§ 1332, 1441, a corporation is deemed to be a citizen of the State in which it is incorporated and of the State of its principal place of business. 28 U.S.C. § 1332(c).

14.      Wal-Mart, Inc., is a Delaware corporation and maintains its principal place of business in Bentonville, Arkansas.  *See* Ex. "E." Wal-Mart, Inc., is a publicly traded company on

the New York Stock Exchange and traded under the symbol WMT. No publicly traded entity owns more than 10% of Walmart Inc. Hence, Defendant is a citizen of only Delaware and Arkansas.[2]

15.     As a result, Defendant Wal-Mar, Inc., is a citizen of only Delaware and Arkansas.

**B.     Citizenship of Plaintiff Cheryl Druker.**

16.     At all times material hereto, Plaintiff Cheryl Druker was a resident of Hollywood, Florida. *See* Ex. "C."; *see also* Ex. "D."  Although Plaintiff's Complaint does not specifically state Plaintiff's citizenship, "[i]t is well established that a party's residence is prima facie evidence of a party's domicile," and "[f]or purposes of diversity jurisdiction, a party's domicile is equivalent to his citizenship." <u>Katz v. J.C. Penney Corp.</u>, 2009 WL 1532129, *3 (S.D. Fla.) (internal citations omitted).

17.     Plaintiff Druker's discovery responses and driver's license state that she is a resident of Hollywood, Florida which is located in Broward County.  *See* Ex. "C."; *see also* Ex. "D."  Thus, Plaintiff's Broward County residence is prima facie evidence of her domicile which is

---

[2]     As Wal-Mart stated in its Answer, Wal-Mart Stores East, L.P. is the owner and operator of the subject store and is, therefore, the correct legal entity. Nevertheless, Wal-Mart submits this Notice of Removal under Wal-Mart, Inc., the entity named in the case caption. In an abundance of caution, Wal-Mart further states that Wal-Mart Stores East, LP, is a foreign limited partnership and maintains its principal place of business in Bentonville, Arkansas. *See* Ex. "E." For purposes of 28 U.S.C. §§ 1332, 1441, a limited partnership is deemed to be a citizen of the State(s) of all of its members. *See* <u>Carden v. Arkoma Associates</u>, 494 U.S. 185, 195 (1990). Defendant Wal-Mart Stores East, LP is and was a Delaware limited partnership with its principal place of business in Arkansas. WSE Management, LLC, and WSE Investment, LLC, are the sole partners of Walmart Stores East, LP. WSE Management, LLC, and WSE Investment, LLC, are and were Delaware limited-liability companies with their principal places of business each located in Arkansas. Walmart Stores East, LLC, is the sole member of both WSE Management, LLC, and WSE Investment, LLC. Walmart Stores East, LLC, is and was an Arkansas limited-liability company, with its principal place of business in Arkansas. Walmart, Inc., is the sole member of Walmart Stores East, LLC. Walmart Inc. is and was a Delaware corporation, with its principal place of business in Arkansas.

equivalent to citizenship for purposes of establishing diversity jurisdiction.  *See* <u>Katz</u>, 2009 WL 1532129 at *3.

18.     Thus, complete diversity exists between the parties.

**III.     <u>The Amount in Controversy Requirement Has Been Met</u>**

19.     "Where, as here, the complaint seeks an unspecified amount of damages, defendant must establish the amount in controversy by a preponderance of the evidence." <u>Katz</u>, 2009 WL 1532129, at *3; *see* <u>Chiari v. Wal-Mart Stores, E., LP</u>, 17-61352-CIV, 2018 WL 4409985, at *5 (S.D. Fla. June 29, 2018).

20.     The amount in controversy in this matter exceeds $75,000.00.  Although Plaintiff's Complaint does not allege a specific amount in controversy, it first became clear from Plaintiff's document production regarding her past and future medical expenses that reveal that the amount in controversy exceeds the jurisdictional minimum in this Court of $75,000.00. *See* Ex. "G." This is only bolstered by Plaintiff's Civil Cover Sheet, Complaint, and discovery responses.

21.     Plaintiff's medical records reveal that those future medical expenses total an amount in excess of $214,000.00. *See* Ex. "G." Moreover, Plaintiff alleges that her past medical expenses regarding the incident, at the time of her discovery responses, amount to at least $16,950.00. *See* Ex. "D."; *see also* Ex. "G." Therefore, without going beyond her past and future medical expenses, the amount in controversy is in excess of $231,000.00.

22.     Plaintiff's Civil Cover Sheet further alleges that the amount of her claim in in excess of $100,000.00. *See* Ex. "H."

23.     In addition to her medical expenses, Plaintiff's Complaint also alleges, *inter alia*, damages for bodily injury, pain and suffering, physical handicap and impairment, disfigurement, mental anguish, loss of capacity for the enjoyment of life, aggravation of a previously existing

condition, impaired working ability, and further alleges that the "injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future." *See* Complaint (Ex. A). This bolsters the fact that the amount in controversy exceeds the jurisdictional minimum. *See* Chiari, 2018 WL 4409985, at *6 (noting in addition to medical expenses, "the Court may consider the seriousness, the painfulness, and the permanency of the injuries as set forth in the Complaint.").

24.     "[A]bundant authority supports the proposition that future damages may be considered in determining the amount in controversy." Id. at *5; *see, e.g.*, La Rocca v. Stahlheber, 676 F.Supp.2d 1347, 1349 (S.D. Fla. 2009) (denying plaintiff's motion to remand, citing plaintiff's demand letter claiming $22,563.00 in medical bills and relying on the court's projections on likely future damages where a doctor estimated that plaintiff " 'could' incur costs of $2,500 to $5,000 per year" for future care); Scott v. Home Depot U.S.A., Inc., 2012 WL 86986, *3 (S.D. Fla. Jan. 11, 2012) (denying plaintiff's motion for remand, concluding that while plaintiff's actual damages were approximately $39,000.00, "the Court's own judicial experience and common sense" shows future treatment would likely exceed the jurisdictional minimum); Katz, 2009 WL 1532129, at *4.

25.     For example, in Chiari, the defendant removed the case to federal court based on diversity. 2018 WL 4409985, at *1. There, the defendant relied upon plaintiff's past medical expenses of $25,298.00, plaintiff's demand letter which contained his medical records, and medical reports regarding plaintiff's future medical expenses. Id. at *1-2. The medical records and demand noted plaintiff suffered a "12-20% permanency rating," and various back injuries, including disc herniations. Id. at *2. Importantly, two reports from plaintiff's treating physicians recommended future steroid injections and spinal surgery, which ultimately "set forth future

damages of over $200,000.00." Id.   Despite the remaining difference between plaintiff's past medical expenses and the $75,000.00 requirement, the court rejected plaintiff's argument to disregard future medical expenses and emphasized that such "damages in this matter can hardly be characterized as speculative." Id. at *6.  Indeed, after analyzing the doctors' medical reports regarding plaintiff's future medical expenses, the court emphasized that "plaintiff's treating physicians/surgeons represented that he will need…surgeries that will total in excess of $200,000.00," and reasoned that plaintiff's demand letter "reflected an honest assessment of damages, **as it was based on medical records that he had provided.**" Id. at *7. As a result, the court denied plaintiff's motion to remand and held that defendant "established by a preponderance of the evidence that the amount in controversy exceed[ed] $75,000.00" Id. at *6.

26.     Here, akin to Chiarai, the relevant portions of Plaintiff's medical records, discovery responses, civil cover sheet, and the Complaint conclusively establish that the amount in controversy far exceeds the $75,000.00 jurisdictional minimum. In her answer to interrogatory number 10, Plaintiff states that she has suffered the following thirteen injuries and that "all the injuries listed…are permanent in nature and have greatly affected [her] life":

27.     "C3-C4, broad based posterior disc herniation with impingement of the thecal sac and impingement of the spinal cord, requiring surgical intervention. C4-05, broad based posterior disc herniation resulting in impingement of the thecal sac and impingement of the spinal cord, requiring surgical intervention. C5-C6, broad based posterior disc herniation and endplate spurring resulting in mild-to-moderate central canal stenosis with impingement of the thecal sac and impingement of the spinal cord, requiring surgical intervention. C6-C7, broad based posterior disc herniation resulting in impingement of the thecal sac, requiring surgical intervention. C7-T1, broad based posterior disc herniation resulting in impingement of the thecal Sac, requiring surgical

intervention. L1-L2, broad based posterior disc herniation resulting in impingement of the theca' sac and mild bilateral foramina stenosis, <u>requiring surgical intervention</u>. L2-L3, there is disc height loss with broad based posterior disc herniation resulting in impingement of the thecal sac and mild bilateral foramina' stenosis, <u>requiring surgical intervention</u>. L3-L4, broad based posterior disc herniation with inferior migration of herniated disc by approximately 2 mm. There is annular tearing of the disc herniation, <u>requiring surgical intervention</u>. L4-L5, broad based posterior disc herniation with annular tearing resulting in impingement of the thecal sac and moderate bilateral foraminal stenosis with impingement of the exiting nerve roots, <u>requiring surgical intervention</u>. L5-S1, broad based posterior disc herniation resulting in impingement of the thecal sac and mild-to-moderate bilateral foraminal stenosis, <u>requiring surgical intervention</u>. Right hand injury, requiring physical therapy and paraffin treatments." Ex. "D."

28.     Importantly, Plaintiff's treating doctor's final assessment reports that Plaintiff Druker "has sustained a 12% impairment to the body as a whole." Ex. "G." Based on her MRI studies, he categorized Plaintiff's alleged back injuries into two groups: (1) her cervical spine and (2) her thoracic and lumbar spine. Regarding her cervical spine, Plaintiff's doctor first recommends steroid injections to **<u>each</u>** affected "epidural space" to cope with alleged pain associated with the alleged injuries. *See* <u>Id</u>. This is a series of three injections "in excess of $1,200.00 **<u>each</u>** injection," which "would not include other injections such as facet blocks." <u>Id</u>. A series of three injections to five epidural spaces of the cervical spine would amount to at least $6,000.00.

29.     Plaintiff's doctor further recommends "surgical intervention," namely a discktomy of her cervical spine. <u>Id</u>. "The cost of this procedure is **<u>in excess</u>** of $100,000.00, which would include hospital costs, surgical costs, anesthetic costs, and postoperative therapy;" and an

"enhanced CT scan." Id. Thus, the minimum amount of Plaintiff's future medical expenses regarding her alleged cervical spine injuries amounts to at least $106,000.00.

30.     Additionally, regarding the thoracic and lumbar areas of Plaintiff's spine, her doctor recommends she get steroid injections to **each** affected "epidural space" associated with her alleged injuries. Id. Similarly, he states that this would be a series of three injections "in excess of $1,200.00 **each** injection," which "would not include other injections such as facet blocks." Id. A series of three injections to five epidural spaces of the cervical spine would amount to at least $8,400.00. Plaintiff's doctor further recommends surgical intervention to her thoracic and lumbar spine. Id. The cost of this procedure is **in excess** of $100,000.00. *See* Id.

31.     Thus, the minimum amount for Plaintiff's future medical expenses regarding her alleged thoracic and lumbar spine injuries amounts to at least $108,400.00.

32.     In sum, Plaintiff's past and future medicals as it stands total—at a minimum—$231,350.00, at a minimum. This figure represents an honest assessment of damages as they are based on medical records that Plaintiff provided. This is before factoring in the associated risks with the aforementioned recommended procedures as noted by her doctor, which include paralysis. Therefore, the amount in controversy far exceeds the jurisdictional minimum of this Court of $75,000.00.

**IV.     <u>Removal is Timely</u>**

33.     In accordance with 28 U.S.C. § 1446(b)(3), Wal-Mart filed its Notice of Removal on May 14, 2021, within thirty (30) days after the date on which it received or was served a copy of Plaintiff's document production.  Plaintiff's document production in support of its Responses to Wal-Mart's Requests for Production contained medical bills and records that made it ascertainable that the amount in controversy exceeded of the statutory requirement of $75,000.00.

*See* Ex. "F."; *see also* Ex. "G." Under Section 1446 (b)(3), the thirty-day period commenced on April 15, 2021, the day after Wal-Mart received Plaintiff's service of her document production on Wal-Mart. Therefore, the filing of Wal-Mart's Notice of Removal is timely.

34.     The statute governing the procedure for removal of civil actions states that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1).

35.     However, "if the case *stated by the initial pleading is not removable*, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable." Id. (emphasis added); *see* Katz, 2009 WL 1532129, at *4 (noting "a district court may consider the complaint and *any later received paper* from the Plaintiff as well as the notice of removal and accompanying documents when deciding upon a motion to remand") (emphasis added). "Additionally, a district court may consider evidence outside of the removal petition if the facts therein existed at the time of removal." Id. (citing Williams v. Best Buy Co., 269 F.3d 1316, 1320 (11th Cir. 2001) and Sierminski v. Transouth Financial Corp., 216 F.3d 945, 949 (11th Cir. 2001) and Sierminski v. Transouth Financial Corp., 216 F.3d 945, 949 (11th Cir. 2000)).

36.     Where the complaint seeks indeterminate damages, "removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Pretka v. Kolter City Plaza II, 608 F.3d 744, 754 (11th

Cir.2010)[3] (internal quotations omitted); *see also* <u>Sierminski v. Transouth Fin. Corp.</u>, 216 F.3d 945, 949 (11th Cir.2000). If satisfaction of the amount in controversy is "not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." <u>Pretka</u>, 608 F.3d at 754 (internal quotations omitted); *see also* <u>Sierminski</u>, 216 F.3d at 949.

      37.    The Eleventh Circuit has clarified and explained that a defendant removing a civil action pursuant to § 1446(b)(3) shall demonstrate sufficient facts to "unambiguously establish" that removal is proper. *See* <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184 (11th Cir. 2007)[4]; *see also* <u>Pretka</u>, 608 F.3d at 757-58.  When it is not facially apparent from the complaint that the amount in controversy has been met, a defendant cannot satisfy its burden and "unambiguously establish" removability based on the complaint—rather they must rely on some other document or paper received subsequent to the Complaint. *See* <u>Garcia v. Wal-Mart Stores E., L.P.</u>, 2014 WL 1333208, at *1 (M.D. Fla. Apr. 3, 2014). Indeed, in <u>Lowery</u>, the Eleventh Circuit warned:

> [A] removing defendant's counsel is bound by Rule 11 to file a notice of removal only when counsel can do so in good faith. We think it highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us-where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice-without seriously testing the limits of compliance with Rule 11. <u>Id</u>. at 1184.

      38.    Where it is not clear from the face of the complaint that the civil action is removable, the complaint does not start the clock and removal is timely if filed within thirty days of receipt of a subsequent document revealing the case is removable. *See* in <u>Garcia</u>, 2014 WL

---

[3]    Although <u>Pretka</u> involved removal under the Class Action Fairness Act of 2005 ("CAFA"), the court there interpreted and applied the general removal procedures of 28 U.S.C. § 1446. <u>Pretka</u>, 608 F.3d at 756 & n. 11.

[4]    <u>Lowery</u> is also a CAFA case. However, like <u>Pretka</u>, its holding is not limited to CAFA.

1333208, at *5. For example, in <u>Garcia</u>, a negligence action, plaintiff's complaint alleged an amount necessary for state court claim. <u>Garcia</u>, 2014 WL 1333208, at *1. Approximately three months later, in response to defendant's request for admissions, plaintiff admitted that her damages exceeded $750,000.00. <u>Id</u>. Based upon this admission, the defendant store removed the case to federal court pursuant to § 1446(b)(3), and plaintiff argued in her motion to remand that removal was untimely. <u>Id</u>. The court rejected plaintiff's argument because the allegations of the complaint were insufficient for defendant "to intelligently ascertain that the case was removable." <u>Id</u>. at *5. Rather, "[i]t was only when Plaintiff admitted in discovery that her claim exceeds $75,000, that defendant could satisfy its burden to show that the amount in controversy is more than $75,000." <u>Id</u>.

39.     Here, as in <u>Garcia,</u> Plaintiff's Complaint merely alleges that this action is one for damages in excess of $30,000.00, the state court jurisdictional limit. *See* Complaint (Ex. A) at ¶ 1. Further, the other allegations contained in the Complaint are devoid of sufficient facts for Wal-Mart to intelligently ascertain that the amount in controversy had been met and that the case was removable at the time service was perfected on Wal-Mart. *See* Complaint (Ex. A). Rather, akin to <u>Garcia</u>, it was only when Wal-Mart received Plaintiff Druker's document production in support of her Responses to Wal-Mart's Request for Production that it became evident that the amount in controversy exceeded $75,000.00. *See* Ex. "G." Specifically, Plaintiff's records reflect past and future medical expenses that exceed $230,000.00.. *See* Ex. "G."

40.     Therefore, as the court held in <u>Garcia</u>, the facts stated herein and evidence attached hereto sufficiently, conclusively, and unambiguously establish that removal is timely, complete diversity exists, and the amount in controversy exceeds the jurisdictional threshold of $75,000.00, such that this Court to maintain and retain jurisdiction.

V.      **Conclusion**

41.      As Wal-Mart has timely filed its Notice of Removal and met this Court's jurisdictional requirement, this Court should permit the removal of Plaintiff's underlying state court action in keeping with 28 U.S.C. §§ 1332, 1441 and 1446.  Upon filing of this Notice of Removal, Wal-Mart will promptly give written notice of the same to Plaintiffs, through their attorneys of record, and the Clerk of the Circuit Court.

WHEREFORE, by reasons of the foregoing, Wal-Mart Stores East, LP respectfully requests that this Notice of Removal be accepted as adequate under federal law, and that Plaintiff's state court action, Case No.  CACE 20-018629 (21), on the docket of the 17th Judicial Circuit Court in and for Broward County, Florida, be removed from that court to the United States District Court for the Southern District of Florida, Broward Division; and that this Court assume full and complete jurisdiction over the case issuing all necessary orders along with any other relief that the Court deems just and proper.

Respectfully Submitted,

By: *s/Spencer Woodstock*
          Darin A. DiBello
          Florida Bar No. 957615
          Spencer Woodstock
          Florida Bar No. 1022678
          FASI & DIBELLO, P.A.
          150 S.E. 2nd Avenue, Suite 1010
          Miami FL  33131
          Telephone:  305-537-0469
          Facsimile:  305-503-7405
          dibello@fasidibellolaw.com
          woodstock@fasidibellolaw.com
          perry@fasidibellolaw.com
          wiza@fasidibellolaw.com
          *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by E-Mail this <u>14th</u> day of May, 2021 to:   David W. Singer, Esq. (dsingeresq@aol.com; rvasquez@1800askfree.com;       tsettel@1800askfree.com;       bkanaly@1800askfree.com; pwalsh@1800askfree.com), Law Offices of David W. Singer & Associates, P.A., Attorney for Plaintiff, 1011 South Federal Highway, Hollywood, Florida 33020.

By: <u>*s/Spencer Woodstock*          </u>
Spencer Woodstock